THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>JESSICA VENINCASA,<br><br>Debtor | Chapter 7<br>Case No. 18-11929-MSH |

**MEMORANDUM OF DECISION ON LAWSON & WEITZEN LLP'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Jessica Venincasa commenced this case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code[1] on May 24, 2018. Thereafter, Lawson & Weitzen, LLP ("L&W") filed a motion for relief from the automatic stay pursuant to Code § 362(d) and Fed. R. Bankr. P. 4001(a). L&W, a law firm, sought relief for the sole purpose of releasing to itself funds of Ms. Venincasa's being held by L&W in its clients' trust account (IOLTA account).[2] Joseph G. Butler, the chapter 7 trustee in this case, and Stewart Title Guaranty Co., Inc. ("Stewart"), a creditor, objected. At issue is whether L&W enjoys an attorney's possessory or retaining lien in the funds it is holding in clients' trust.

The facts needed to decide this controversy are not in dispute. In October of 2009, pursuant to a written contingent fee agreement, L&W undertook the representation of Ms. Venincasa with respect to her claims against certain family members and affiliated business

---

[1] All references to the Bankruptcy Code or Code refer to title 11 of the United States Code, 11 U.S.C. 101 *et seq*.

[2] "IOLTA" stands for "Interest on Lawyers' Trust Accounts." *See* Mass. R. S. Ct. 3:07: R. Prof. C. 1.15(g). "Lawyers creating and maintaining an IOLTA account shall direct the depository institution . . . to remit interest or dividends, net of any service charges or fees . . . to [the Massachusetts] IOLTA Committee," which distributes the funds to various charitable organizations. Mass. R. S. Ct. 3:07: R. Prof. C. 1.15(g)(2)(i) and (4).

1

entities. L&W was to be paid a fixed legal fee of one-third of any recovery by Ms. Venincasa on her claims, plus expenses. Litigation ensued in the Suffolk County Massachusetts Superior Court (the "Family Litigation") and in 2012, Ms. Venincasa and several defendants entered into a partial settlement agreement whereby Ms. Venincasa would receive $312,500.

Before payment of the settlement proceeds could be effectuated, one of Ms. Venincasa's judgment creditors, Developers Surety and Indemnity Company, got wind of the deal and demanded that L&W pay it the money. L&W demurred, informing Developers that the settlement proceeds were subject to L&W's attorney's lien, which was superior to Developers' claim. After some back and forth, L&W agreed that when the money came in, L&W would place it in escrow until the matter could be sorted out. L&W subsequently deposited the settlement proceeds in its IOLTA account.

In July, 2012, without objection by Developers, L&W released to itself $131,630.75 from the escrowed settlement proceeds—its one-third contingent fee of $104,166.67 plus expenses of $27,464.08. The $180,869.25 balance of the settlement proceeds remains in L&W's IOLTA account and is the subject of L&W's stay relief motion.

On May 23, 2017, in an action in the Worcester County Massachusetts Superior Court, Stewart obtained a permanent injunction against Ms. Venincasa enjoining her from "transferring, encumbering, assigning, or otherwise disposing of her right to funds from or her interest in" the Family Litigation or the Worcester Superior Court action to anyone other than Stewart.[3]

In addition to representing her on a contingent fee basis in the Family Litigation, L&W performed legal services for Ms. Venincasa for which it charged her by the hour. L&W billed

---

[3] It is not clear at this stage whether Stewart asserts rights in the IOLTA funds. It does, however, dispute L&W's claim of a lien in those funds.

2

Ms. Venincasa a total of $124,913.84 for these services. Ms. Venincasa never paid her bill but does not dispute it.

L&W now wants to get paid. It seeks relief from the automatic stay pursuant to Code § 362(d)[4] so that it may release to itself $124,913.84 from the $180,869.25 in settlement funds remaining in its IOLTA account. L&W asserts an attorney's possessory or retaining lien over the escrow funds to secure payment of Ms. Venincasa's unpaid legal fees.

The chapter 7 trustee and Stewart oppose the granting of stay relief to L&W.[5] The trustee and Stewart argue that the only attorney's lien available to L&W was the lien for its one-third contingent fee plus expenses, and that claim has been paid in full. L&W, they maintain, is now just another general unsecured creditor of Ms. Venincasa's in this bankruptcy case and must wait in line with all her other general unsecured creditors.

To properly evaluate the parties' positions, a brief overview of the nature of attorneys' liens will be helpful. Attorneys' liens generally divide into two classes: (1) general, possessory, or retaining liens; and (2) charging or special liens. L.S. Tellier, *Rights and Remedies of Client as Regards Papers and Documents on Which Attorney Has Retaining Lien*, 3 A.L.R.2d 148 § 1 (1949 & Supp. 2019); *see also* John S. McCann, *The Attorney's Lien in Massachusetts*, 69 Mass.

---

[4] The statute provides, in relevant part:
(**d**) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
   (**1**) for cause, including the lack of adequate protection of an interest in property of such party in interest;
   (**2**) with respect to a stay of an act against property under subsection (a) of this section, if--
      (**A**) the debtor does not have an equity in such property; and
      (**B**) such property is not necessary to an effective reorganization.
11 U.S.C. § 362(d).

[5] Developers did not oppose the stay relief motion, but that may be because L&W failed to properly serve the motion on Developers.

L. Rev. 68, 68 (1984). Justice Benjamin Cardozo, during his time on the New York Court of Appeals, illustrated in typically vivid language the two categories of attorneys' liens:

> There was a retaining lien on all papers, securities or moneys belonging to his client which came into his possession in the course of his professional employment . . . This was a general lien for the entire balance of account. It was dependent, however, upon possession. There was also a charging lien, which bound a judgment recovered through the attorney's efforts. This lien was not dependent on possession. The very reason for its existence was to save the attorney's rights where he had been unable to get possession. It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained . . . But the reason for the existence of this lien suggests the limitation of its scope. It was not a lien for a general balance of account. It was a lien for the value of the services rendered in that very action.

*Matter of Heinsheimer*, 214 N.Y. 361, 364 (N.Y. 1915) (internal citations and quotations omitted).

Massachusetts law expressly authorizes an attorney's charging lien. *See* Mass. Gen. Laws ch. 221, § 50.[6] It was its charging lien arising out of services rendered and expenses incurred in the Family Litigation that L&W enforced by drawing down $131,630.75 from the settlement proceeds in its IOLTA account. The status under Massachusetts law of possessory or retaining liens, which L&W asserts in the remainder of the settlement proceeds, is far less clear. While several states have enacted statutes recognizing attorneys' possessory or retaining liens,

---

[6] The statute provides: "From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise expressly provided by statute." Mass. Gen. Laws ch. 221, § 50.

4

s*ee, e.g.*, Georgia's Ga. Code Ann. § 15-19-14(a) (2019),[7] and Iowa's Iowa Code § 602.10116 (2019),[8] Massachusetts has not, nor does it appear that any Massachusetts court has ruled directly on the question of whether there is any basis under Massachusetts law by which an attorney may assert a possessory lien on a client's property. *See Torphy v. Reder*, 257 N.E.2d 435, 438 (Mass. 1970) ("Whether in this Commonwealth an attorney has a lien for his fees on the moneys, papers, books or other property of his client which come into his possession has never been squarely decided.").

In a series of cases involving attorneys' liens, the Supreme Judicial Court of Massachusetts ("SJC") managed to sidestep ruling on the availability of possessory or retaining liens by finding that the particular facts of each case before it did not support the existence of such a lien. *See Torphy v. Reder*, 257 N.E.2d at 238 ("The facts of the case before us do not require that we make a broad determination that an attorney may claim a possessory lien in this Commonwealth. We are convinced on the facts of the case no possessory lien would be claimed

---

[7] The Georgia statute provides: "Attorneys at law shall have a lien on all papers and money of their clients in their possession for services rendered to them. They may retain the papers until the claims are satisfied and may apply the money to the satisfaction of the claims." Ga. Code Ann. § 15-19-14(a).

[8] The Iowa statute states:
"An attorney has a lien for a general balance of compensation upon:
  1. Any papers belonging to a client which have come into the attorney's hands in the course of professional employment.
  2. Money in the attorney's hands belonging to a client.
  3. Money due a client in the hands of the adverse party, or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed, from the time of giving notice in writing to such adverse party, or attorney of such party, if the money is in the possession or under the control of such attorney, which notice shall state the amount claimed, and, in general terms, for what services.
  4. After judgment in any court of record, such notice may be given, and the lien made effective against the judgment debtor, by entering the same in the judgment or combination docket, opposite the entry of the judgment.
Iowa Code § 602.10116.

5

by the petitioner."); *Simmons v. Almy*, 103 Mass. 33, 35 (Mass. 1869) ("The law which gives an attorney a lien, in some cases, upon the papers of his client in his hands, for fees and disbursements, if recognized as prevailing in this Commonwealth, has no application here."); *White v. Harlow*, 5 Gray 463, 465 (Mass. 1855) ("How far the law, giving an attorney a lien upon the papers of his clients in his hands for fees and disbursements, has been adopted in this commonwealth, is doubtless an open question. . . We have not felt it necessary to decide the general question; for, supposing the rule of the common law to be in force in this state, we think the facts, as reported, did not bring the witness within it.").[9]

L&W points to *Webber v. Napolitano*, 320 Mass. 765 (Mass. 1947), a decision by the SJC, as implicitly recognizing attorneys' possessory liens in Massachusetts. In *Webber*, the SJC upheld a lower court's finding that regardless of whether an attorney had any right under the Massachusetts charging lien statute, the attorney had not acted "unreasonably, maliciously, and without right" in retaining a lodging house license he secured for his client. This finding, argues L&W, suggests that an attorney may claim a possessory lien in Massachusetts. L&W also invokes Mass. Gen. Laws ch. 255 §§ 32 and 33, related to the dissolution of liens on personalty, including those "by attorneys at law upon books, papers, documents or other personal property" as indirect proof that such liens may be available in Massachusetts. In addition, though not cited by L&W, two decisions by the U.S. District Court for the District of Massachusetts suggest that Massachusetts courts might recognize attorneys' possessory or retaining liens under the right

---

[9] The Massachusetts Bar Association also declined to take a position on whether attorneys' possessory or retaining liens exist in Massachusetts. *See* Massachusetts Bar Association, Opinion No. 76-24 (1976). ("Whether a retaining or possessory lien on a client's books and papers, the purpose of which is to secure payment of legal fees and expenses, exists in Massachusetts is beyond the jurisdiction of this committee, since it is a question or law which should be submitted to the courts for determination.").

circumstances. *See Davis v. Davis*, 90 Fed. Rep. 791 (D. Mass. 1898) ("[I]f an attorney's lien on his client's papers amounts to anything, I think he may assert it as against the client, even when summoned by him to produce the papers by subpoena duces tecum."); *In re GF Redmond & Co.*, 17 F.2d 501 (D. Mass. 1927) ("The common law recognizes a possessory lien which an attorney can enforce in respect to papers and documents of his client which are in the attorney's possession.").

As tempting as it would be to read the tea leaves brewed from all these precedents to predict how the SJC would rule on the availability in Massachusetts of an attorney's possessory lien, the facts here neither necessitate nor justify my doing so. That is because even if Massachusetts law were to recognize such liens, L&W would not hold one on the settlement funds. In *Torphy v. Reder*, the petitioning attorney represented his client as defendant in a suit brought by the client's wife to determine the ownership of certain property, including several stock certificates and bank books. 257 N.E.2d at 437. The master to whom the original suit was referred found that one half of the property belonged to the petitioning attorney's client and suggested that the stock certificates and bank books be placed in the custody of the court pending final adjudication. *Id.* When the clerk of court refused to accept the property, the petitioning attorney and opposing counsel deposited the items in a safe deposit box from which they could not be removed absent the consent of both attorneys. *Id.* The SJC held that under the facts of the case, the petitioning attorney did not have a possessory lien over the property. *Id.* at 438. The Court focused on the fact that the stock certificates and bank books, though received by the attorney from his client "in the course of their professional relationship," were to be held not by the attorney alone but "for a special purpose which was inconsistent with the petitioner's claim

7

of lien: a neutral depository to which neither counsel had exclusive access pending further order of the court." *Id.* The Court reasoned:

> This is not an uncommon type of arrangement, partaking of the nature of a trusteeship, when the right to intangibles is disputed by parties. Indeed, in his correspondence with [his client], the petitioner referred to himself as "escrow agent" and to his successor attorney as "escrow agent in my stead." To permit one who has so acted to assert a possessory lien on the property as security for professional services would not only discourage similar arrangements in the future, but would be inconsistent with the fiduciary duty voluntarily assumed by the attorney.

*Id.*

The facts in this case are analogous to those in *Torphy*. Regardless of whether an attorney may claim a possessory or retaining lien in Massachusetts, the facts here are insufficient for a finding that L&W possesses such a lien over any portion of the remainder of the settlement funds. Just as the petitioning attorney in *Torphy* placed the stock certificates and bank books in escrow in a safe deposit box pending final adjudication of the parties' rights, L&W escrowed the settlement funds in its IOLTA account pending resolution of the competing claims to the funds. L&W's attempt to assert a possessory lien over the settlement funds it held in escrow implicates *Torphy*'s twin concerns over allowing an attorney who has acted as an escrow agent to assert a possessory lien on the escrowed property as security for professional services rendered. The SJC in *Torphy* expressed concerns that recognizing a possessory lien under such circumstances would "discourage similar arrangements in the future" and "be inconsistent with the fiduciary duty voluntarily assumed by the attorney." *See Torphy*, 257 N.E.2d at 438.

Under the facts of this case, I cannot find that L&W has a possessory or retaining lien

over any of the funds it is holding in escrow. Having determined that L&W does not have a possessory or attorney's lien, an order denying L&W's motion for relief from stay shall enter.

Dated at Boston, Massachusetts this 23rd day of April, 2019.

                By the Court,

                Melvin S. Hoffman
                U.S. Bankruptcy Judge

Counsel Appearing:   J. Mark Dickison, Esq.
                           Lawson & Weitzen, LLP
                           Boston, Massachusetts
                             for creditor Lawson & Weitzen

                           Joseph G. Butler, Esq.
                           Law Office of Joseph G. Butler
                           Westwood, Massachusetts
                             for Joseph G. Butler, chapter 7 trustee

                           Jonathan M. Hixon, Esq.
                           Hackett Feinberg P.C.
                           Boston, Massachusetts
                             for creditor Stewart Title Guaranty Co., Inc.